

FILED

NOV 29 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| In re<br><br>G. WENDELL ULBERG and<br>KATHLEEN M. ULBERG,<br><br>        Debtor(s).<br>_____<br><br>G. WENDELL ULBERG and<br>KATHLEEN M. ULBERG,<br><br>        Plaintiff(s),<br>v.<br><br>BANK OF AMERICA, N.A., et<br>al.,<br><br>        Defendant(s).<br>_____ | Case No. 10-53637-E-13<br><br><br><br><br><br><br><br>Adv. Pro. No. 11-2122<br>Docket Control No. SAC-2 |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM OPINION AND DECISION**

    G. Wendell Ulberg Jr. and Kathleen M. Ulberg ("Plaintiff-Debtors") commenced this Adversary Proceeding against Bank of America, N.A., Pacific Crest Partners, Inc. ("Pacific Crest"), John Mudgett ("Mudgett"), and Recontrust Company, N.A. ("Recontrust") concerning ownership of real property commonly known as 1382 Mineral Springs Trail, Alpine Meadows, California (the

"Property"). Though this litigation the Plaintiff-Debtors seek to establish that they and their Chapter 13 bankruptcy estate are the owners of the Property, having ownership interests superior to those of the Defendants.

## OVERVIEW OF ADVERSARY PROCEEDING

Movant-Defendants Pacific Crest and Mudgett move the court for an order abstaining from hearing this adversary proceeding on the basis of mandatory abstention, pursuant to 28 U.S.C. § 1334(c)(2), because it alleges that the proceeding is based upon state law not arising under Title 11, and could not have been commenced in this court without the filing of the parent bankruptcy case. Because the court concludes that it is appropriate for this adversary proceeding to be heard, the motion for abstention is denied.

Plaintiff-Debtors assert that they are the owners of the Property, which is a single family home. On December 27, 2010, at 8:00 a.m., Recontrust conducted a nonjudicial foreclosure sale on behalf of Bank of America, N.A. and sold the home to Pacific Crest. On December 27, 2010, at 1:30 p.m., Plaintiff-Debtors filed for relief under Chapter 13 of Title 11. On January 10, 2011, Plaintiff-Debtors filed a plan that proposed to pay $2,600.00 per month for 36 months, despite the fact that the house had already been sold. On February 1, 2011, Plaintiff-Debtors filed a first amended plan that proposed to pay $720.00 per month for 36 months to pay for a car and priority taxes.

On February 22, 2011, the Plaintiff-Debtors filed this adversary proceeding against several defendants, including Bank of America, N.A., Pacific Crest, Mudgett, and Recontrust. On March 15, 2011, a First Amended Complaint was filed, which alleges

the following causes of action:

    (1)   Fraud against Bank of America, N.A.,

    (2)   Negligent Misrepresentation against Bank of America, N.A.,

    (3)   Unfair Business Practices against Bank of America, N.A. and Recontrust,

    (4)   International Interference with Contractual Relations against Recontrust, Mudgett and Pacific Crest,

    (5)   Cancellation of Trustee's deed of trust against all Defendants,

    (6)   Quiet Title against all Defendants,

    (7)   Declaratory Relief against all Defendants, and

    (8)   Injunctive Relief against Mudgett and Pacific Crest.

According to Plaintiff-Debtors' Complaint, Plaintiff-Debtors were negotiating a loan modification with Bank of America, N.A. Dckt. 47 at 4. A representative of Bank of America, N.A. allegedly promised to postpone the Trustee's Sale, however, the Property was subsequently sold to Pacific Crest at a nonjudicial foreclosure sale. Plaintiff-Debtors assert that the nonjudicial foreclosure sale was in violation of the postponement represented by Bank of America, N.A. and that in reliance thereon, the Plaintiff-Debtors had put off filing the present bankruptcy case.

Plaintiff-Debtors also allege that Pacific Crest is not a bona fide purchaser of the property at the nonjudicial foreclosure sale because they notified Mudgett, Pacific Crest's agent, that Bank of America, N.A. was engaged in loan modification negotiations and that the sale was postponed by the Bank. Mudgett disputes that Plaintiff-Debtors told him that they were working on a loan modification. On March 17, 2011, the court granted the motion for relief from the automatic stay, authorizing Pacific Crest to

proceed with its rights under state law. However, this court issued a preliminary injunction enjoining Pacific Crest from proceeding with any action to obtain possession of the Property, which is conditioned on the Plaintiff-Debtors depositing $2,000.00 a month with the Chapter 13 Trustee which may be used by this court for Fed. R. Civ. P. Rule 65(c) damages or payment of the claim secured by the Property if the foreclosure sale is rescinded.

## ANALYSIS

At this early junction in the case, for this Motion to Abstain and the related motion to dismiss the adversary proceeding, the court considers the Complaint as pled by the Plaintiff-Debtors to identify what claims are being presented in this Adversary Proceeding and their connection to the bankruptcy case. The First Amended Complaint, Dckt. 11, alleges,

  a. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J), which the court concludes is a typographical error, and the reference is to § 157(b)(2)(K), which defines as core proceedings the "determination of the validity, extent, or priority of liens."

  b. The Plaintiff-Debtors filed their Chapter 13 case on December 27, 2011.

  c. The Plaintiff-Debtors reside at and claim to be the owners of the Property.

  d. Plaintiff-Debtors have owned the Property since 1986 and as of the commencement of the case the Property had a fair market value of $450,000.00.

  e. Bank of America, N.A. held a promissory note ("First Note") on which the Plaintiff-Debtors owed $218,741.00 secured by a First Deed of Trust recorded against the Property.

  f. Bank of America, N.A. held a second promissory note ("Second Note") on which the Plaintiff-Debtors owed $151,186.00 secured by a Second Deed of Trust recorded against the Property.

  g. Pacific Crest asserts that it purchased the Property at a nonjudicial foreclosure sale on December 27, 2010,

4

      conducted for Bank of America, N.A. pursuant to the First Deed of Trust.

h.    Mudgett is a licensed real estate sales person who was at all times relevant to the Complaint employed by Pacific Crest.

i.    In June 2010, the Plaintiff-Debtors submitted a completed loan modification request to Bank of America, N.A. under the HAMP program. Under the HAMP program, once a loan modification application has been submitted, until Bank of America, N.A. determined that the Plaintiff-Debtors were ineligible for a loan modification, the Bank was prohibited from conducting a foreclosure sale.

j.    Bank of America, N.A. made the following representations to the Plaintiff-Debtors:

    i.    During the loan modification review process Bank of America, N.A. would not proceed with a foreclosure on the Property;

    ii.    On or about October 21, 2010, Bank of America, N.A. represented that it would send a Reinstatement Letter to allow the Plaintiff-Debtors to bring the loan current; and

    iii.    On December 17, 2010, Bank of America, N.A. representative Lee LNU ["Last Name Unknown"] told Plaintiff-Debtors' agent Jamie Cabrera that because there was pending a loan modification request, the nonjudicial foreclosure sale set for December 28, 2010, would be postponed.

k.    In reliance on the representations by Bank of America, N.A., the Plaintiff-Debtors,

    i.    Ceased making payments to Bank of America, N.A. while they were waiting for a decision on the proposed loan modification; and

    ii.    Refrained from taking other action, including the filing of a Chapter 13 bankruptcy case, to protect their ownership of the Property from being foreclosed on by Bank of America, N.A.

l.    Prior to December 27, 2010, Bank of America, N.A. announced that there would be a moratorium on foreclosures, effective December 27, 2010.

m.    On December 24, 2010, Mudgett came to the Property and informed the Plaintiff-Debtors that there would be a foreclosure sale conducted for the Property on December 27, 2011. Plaintiff-Debtors alleged that they told Mudgett that there was a pending loan modification for the obligation that was the subject of the

5

foreclosure sale.

n. On December 27, 2010, prior to the foreclosure sale, Recontrust (the trustee under the First Deed of Trust) was advised that the Debtors had filed a Chapter 13 bankruptcy. It is alleged that the representative of Recontrust told the Plaintiff-Debtors that the file would be placed in "bankruptcy status" and the foreclosure sale would not be conducted.

o. It is further alleged that on December 27, 2011, a foreclosure sale was conducted by Recontrust and the Property was sold to Pacific Crest. The First Amended Complaint further alleges that Pacific Crest represents that it paid $190,000.00 for the Property.

p. That the sale was invalid based on Bank of America, N.A. having announced a moratorium on all foreclosure sales in California.

q. That the sale was invalid because the Plaintiff-Debtors' loan modification was under review and no determination had been communicated to Plaintiff-Debtors by Bank of America, N.A.

r. That Bank of America, N.A. lacked proper documentation (though the First Amended Complaint does not allege the missing documentation).

s. That Recontrust, trustee for Bank of America, N.A. under the First Deed of Trust, was aware that the Chapter 13 bankruptcy case was filed and proceeded with the foreclosure sale (which would be in violation of the automatic stay).

t. That the sale to Pacific Crest was a sham transaction, based on the great disparity between the alleged $190,000.00 sales price and the asserted $450,000.00 value of the Property.

u. That the sale to Pacific Crest was a sham because it is in the business of buying distressed properties at foreclosure sales at prices severely under value in order to resell such properties for a profit.

The First (Fraud) and Second (Negligent Misrepresentation) Causes of Action are against Bank of America, N.A., asserting that in reliance on the Bank's false representations the Plaintiff-Debtors refrained from protecting their interests in the Property and have been damaged at least $100,000.00. The Third Cause of

6

Action is stated against Bank of America, N.A. and Recontrust under California Business and Professions Code §§ 17200 et. seq., alleging unfair business practices relating to the loan modification process with respect to the Plaintiff-Debtors. The Fourth Cause of Action is stated against Recontrust, Mudgett, and Pacific Crest, alleging that these Defendants intentionally interfered with the contractual relationship between the Plaintiff-Debtors and Bank of America, N.A., including the loan modification process. The Fifth (Cancellation of Trustee's Deed) and Sixth (Quiet Title) Causes of Action are asserted against all Defendants and seeks cancellation of the trustee's deed delivered by Recontrust to Pacific Crest and to have a determination that the Plaintiff-Debtors own the Property. The Seventh Cause of Action is for declaratory relief against all Defendants of their respective rights and duties under the First Deed of Trust. The Eighth Cause of Action seeks a permanent injunction against Mudgett and Pacific Crest from asserting any ownership interests of Pacific Crest in the Property.

The Chapter 13 Petition in the Plaintiff-Debtors' bankruptcy case was filed at 11:01 a.m. on December 27, 2011. Eastern District of California Case No. 10-53637. The First Amended Complaint does not allege the specific time the foreclosure sale was conducted, but does allege that it was after the filing of the bankruptcy case. The bankruptcy petition was filed by the Plaintiff-Debtors in *pro se*. On February 1, 2011, a substitution of counsel was filed, naming John Downing as counsel for the Plaintiff-Debtors in the Chapter 13 bankruptcy case.

**Federal Court Jurisdiction and Bankruptcy Court Proceedings**

Jurisdiction for this matter arises under 28 U.S.C. § 1334(b) which provides for original but not exclusive federal court jurisdiction for all civil proceedings arising under Title 11 (the Bankruptcy Code), or arising in or related to cases under Title 11. Federal court jurisdiction is exclusive for all property, wherever located, of a debtor as of the commencement of the case and of property of the estate.  28 U.S.C. § 1334(e)(1).  Removal of a state court action to federal court if federal jurisdiction exists under 28 U.S.C. § 1334.  28 U.S.C. § 1452.

Congress vests in the bankruptcy courts, for matters referred to the bankruptcy court by each respective United States District Court, jurisdiction for all proceedings arising under Title 11, or arising in or related to Title 11.  The United States District Court for the Eastern District of California has referred to this bankruptcy court all matters arising under, arising in or related to Title 11 as authorized in 28 U.S.C. § 157(a).[1]  This bankruptcy court may thereon enter final judgments and orders on all cases under Title 11, core proceedings arising under Title 11 or arising in a case under Title 11, and non-core proceedings to which the parties have consented, with all such rulings being subject to appellate review.  28 U.S.C. § 157(b)(1)(2), and (C)(2).

In *Stern v. Marshall*, \_\_\_ U.S. \_\_\_, 141 S. Ct. 2594 (2011), the United States Supreme court considered the exercise of federal court jurisdiction by the bankruptcy court. At issue in that case was a counterclaim filed by the debtor against a creditor who had filed a proof of claim in the bankruptcy case.  At issue in *Stern*

---

[1] Eastern District of California District Court General Order 182.

8

was whether the bankruptcy judge could issue the final judgment on the counterclaim or such final determination must be made by an Article III judge, absent the consent of the creditor.

Though concluding that the creditor had consented to adjudication of the rights and interests under the proof of claim, the Supreme Court engaged in further analysis of the counterclaim. Merely because a creditor chooses to file a claim, and thereby consent to the bankruptcy judge issuing the final judgment on the counterclaim. In *Stern*, the counterclaim did not arise under or in the bankruptcy case, but was a related matter wholly dependent on state law.

Though the bankruptcy courts had been granted statutory authority to hear and enter the final judgments on all counterclaims against persons filing claims in a bankruptcy case,[2] such authority could not be constitutionally forced on an objecting creditor for a counterclaim which was unrelated to the claim filed in the case. In *Stern*, there were no common issues or law shared between the claim and counterclaim, and the debtor sought affirmative relief (a more than four hundred million dollar judgment) against the creditor. Because the creditor objected, the bankruptcy judge was not permitted to enter the final judgment, but such had to be entered by an Article III district court judge. Though defined by Congress as a "core matter" subject to the final jurisdiction of the bankruptcy judge, the counterclaim in *Stern* was a "related to matter" for constitutional purposes.

For matters not arising under or arising in the bankruptcy

---

[2] 28 U.S.C. § 157(b)(2)(C)

9

case, defined as related to matters for which no consent[3] is given to the bankruptcy court for a final judgment, 28 U.S.C. § 157(c) provides that the bankruptcy judge may hear the proceeding and submit proposed findings of fact and conclusion of law to the district court, for the district court to make the final determinations and enter the judgment. The district court considers the proposed findings of fact and conclusions of law and reviews de novo matters to which any party has timely and specifically objected.[4]

In the present case, the court is presented with a series of state law, non-bankruptcy claims against the various defendants. These sound as "related to" matters before this court. However, the underlying, fundamental claim asserted by the Plaintiff-Debtors is that the Property is owned by them and is property of the bankruptcy estate.[5] This is not merely an attempt to enforce rights which are property of the bankruptcy estate (such as the monetary counterclaim in *Stern*)but a dispute over ownership of the Property itself.

Congress granted to the district courts and bankruptcy courts exclusive jurisdiction over all property of the debtor, as of the commencement of the case, and all property of the bankruptcy estate.[6] Though state law principles may be at issue in

---

[3] 28 U.S.C. § 157(c)(2) provides a statutory basis for parties to consent for the bankruptcy judge to make the findings of fact, conclusions of law, and enter the final judgment for non-core related matters.

[4] 28 U.S.C. § 157(c)(1).

[5] 11 U.S.C. § 541.

[6] 28 U.S.C. § 1334(e).

determining the respective rights and interests of a person in property of the estate, only the federal courts have jurisdiction over those issues. The issue in this case concerning whether the Property is property of the bankruptcy estate must be determined in federal court. Determination of whether the Property is property of the estate will necessarily determine facts and issues of law which are at the basis for the other claims asserted by the Plaintiff-Debtors. Because the parties cannot attempt to retry the determinations made in these proceedings (doctrines of *res judicata* and collateral estoppel), there is nothing for this court to abstain from hearing.

    That leaves for this court the decision of whether this is a core matter, for which this court makes the findings of fact and conclusions of law, and then enters the final judgment, or a related to matter, for which this court transmits proposed findings of fact and conclusions of law to the district court. This requires both a statutory and constitutional analysis. Core proceedings are defined by Congress to include (1) matters concerning the administration of the estate, (2) orders to turn over property of the estate, (3) determinations of validity, extent, or priority of liens, (4) confirmation of plans, (5) orders approving the use or lease of property, and (6) proceedings affecting the liquidation of the assets of the estate, adjustment of the debtor-creditor relationship.[7] The First Amended Complaint implicates each of these statutorily examples of core proceedings, which go to the heart of this bankruptcy case - the restructure of the Plaintiff-Debtors' finances and assets in a Chapter 13 case.

---

[7] 28 U.S.C. § 157(b)(2)(A), (E), (K), (L), (M), and (O).

Determination of the ownership of the Property is necessary for the administration of the case and assets of the estate.  No use of the Property, control of the Property, determination of the extent, validity, and priority of the liens, or completion of any bankruptcy plan can occur without this determination.  As defined by Congress, this is a core proceeding for the bankruptcy judge to issue the final judgment.

The core versus related proceeding analysis in this case has an additional curve, the asserted ownership of the Property by Pacific Crest.  There is no contention that Pacific Crest was a creditor of the Plaintiff-Debtors.  In this fight, Pacific Crest advances itself as a person who purchased property at a nonjudicial foreclosure sale, with no other entanglement with the Plaintiff-Debtors or Bank of America, N.A.  But for the Plaintiff-Debtors asserting that the Property is property of the bankruptcy estate, Pacific Crest would not be before the court.  However, that claim of ownership implicates and impedes with the exercise of the core proceeding jurisdiction of this bankruptcy court.

As instructed by the Supreme Court in *Stern*, the court must also consider whether the bankruptcy judge, as a judicial officer of the district court,[8] entering the final judgment, findings, and conclusions improperly treads on the judicial power of the United States to be exercised by Article III judges.  Though filing an answer, Mudgett and Pacific Crest deny the allegation that this is a core matter and by their conduct have not consented to this bankruptcy court entering the final judgment in the event that this is not a core proceeding.

---

[8] 28 U.S.C. § 151.

12

As opposed to *Stern*, the issues in this Adversary Proceeding relate to the core principals arising under and in a bankruptcy case, the administration and ability to use property of the bankruptcy estate in a reorganization by the debtor. Accepting Pacific Crest's contentions, it would be entitled to immediately dispossess the Plaintiff-Debtors of the Property through the expedited unlawful detainer proceedings in state court. By that state court process, Congress' statutory scheme for a uniform bankruptcy law would be impermissibly thwarted.

Due to the timing of the decision in *Stern* and briefing on this matter, the parties were unable to provide the court with thoughtful analyses of this issue. Given the involvement of Pacific Crest in this Adversary Proceeding and the newness of the *Stern* issue, the court will err on the side of caution and treat this adversary proceeding as a contested matter subject to the provisions of 28 U.S.C. § 157(c)(1), conduct the proceedings, and make proposed findings of fact and conclusions of law to the district for the entry of the final judgment for all future matters in this Adversary Proceeding, effective December 1, 2011.

If upon further reflection the parties decide to consent to this court making the findings of fact and conclusions of law and entering the final judgment, they may do so in writing and filed with the court by January 20, 2012. Such consent must be provided early in the proceeding and is not something to be withheld until the eve of trial. Conversely, the parties may seek to have the district court withdraw the reference of this Adversary Proceeding and conduct all proceedings in the district court pursuant to 28 U.S.C. § 157(d).

**Ruling on Mandatory Abstention**

According to 28 U.S.C. § 1334(c)(2), a bankruptcy court "shall" abstain from hearing a proceeding based on state law claims, but not arising under or arising in a case under Title 11, if "an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." *Williams v. Shell Oil Co.*, 169 B.R. 684, 688, 690-91 (Bankr. S.D. Cal. 1994). This is called "mandatory abstention."

The bankruptcy court is required to abstain from hearing "'a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11' unless there is another basis for federal jurisdiction or the matter cannot be timely adjudicated in state court." *In re Meadowbrook Estates*, 246 B.R. 898, 903 (Bankr. E.D. Cal. 2000) (*quoting* 28 U.S.C. § 1334(c)(2)). "The bankruptcy court is not required to abstain unless the proceeding is merely 'related to' a case under title 11. Generally speaking, related proceedings concern causes of action that are owned by the debtor at the time the petition is filed and that become part of the estate pursuant to 11 U.S.C. § 541(a)." *Id.*

In this adversary proceeding, the complaint alleges eight (8) state law claims. Movant-Defendants argue that the claims cannot be adjudicated by the bankruptcy court because they are not "core" proceedings. However, the *Stern v. Marshall* holding that "core proceedings are those that arise in a bankruptcy case or under Title 11," and "[t]he detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters." 2011 WL 2472792 at *10, 2011 U.S. LEXIS 4791 at *28. It is clear

that the Plaintiff-Debtors' eight claims "concern the administration of the estate" and could be considered core proceedings pursuant to 28 U.S.C. § 157(b)(2). First, Movant-Defendants argue that the real property at the heart of Plaintiff-Debtors' claims is not property of the Bankruptcy estate, because it was sold prior to Plaintiff-Debtors' filing of the petition. However, whether or not this property is part of the Bankruptcy estate is exactly what Plaintiff-Debtors hope to establish. If Plaintiff-Debtors' causes of action succeed, the Property may well become part of the bankruptcy estate.

Next, Movant-Defendants argue that Plaintiff-Debtors' causes of action are not so closely related to the bankruptcy case as to warrant being heard by this bankruptcy court. Unlike the counterclaim at issue in *Stern*, Plaintiff-Debtors' claim in the instant case is directly tied up in the administration of the estate and liquidation of its assets. The Plaintiff-Debtors assert that the property at issue is property of the bankruptcy estate to be administered through the Chapter 13 plan. All of the claims center around the facts and ruling the court must make in determining the property of the Estate in this case. In addition, this issue involves the proof of claim filed by Bank of America, N.A. in this case, asserting that it still has a deed of trust against the Mineral Springs Property.

Movant-Defendants argue that this court must abstain because the Chapter 13 plan can be confirmed without the inclusion of the subject property, and the complaint will have no impact on the administration of the bankruptcy estate. Both of theses arguments are built on the contention that the instant claim is not a core

proceeding. However, as addressed above, the Plaintiff-Debtors' claim is core proceedings pursuant to 28 U.S.C. § 157(b)(2). Further, as discussed below, there has been no showing that there can be another proceeding timely (consistent with the time limits imposed by Congress in a Chapter 13 case) adjudicated in a state forum.

**Ruling on Permissive Abstention**

Should the doctrine of mandatory abstention not apply, Movant-Defendants argue that the court should abstain from hearing this adversary proceeding under the doctrine of permissive abstention. The court may abstain from hearing a proceeding arising under title 11, or arising in or related to a case under title 11, if doing so is in the interests of justice, comity with state courts, or respect for state law. 28 U.S.C. § 1334(c)(1). "Unlike mandatory abstention which applies only to non-core matters, discretionary abstention applies to both core and non-core matters." *Holtzclaw v. State Farm Fire and Casualty Co. (In re Holtzclaw)*, 131 B.R. 162, 164 (E.D. Cal. 1991) (*citing In re Ascher*, 128 B.R. 639, 645 (Bankr. E.D. Ill. 1991)).

In deciding if abstention is appropriate, the court considers the following nonexclusive factors:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,

(2) the extent to which state law issues predominate over bankruptcy issues,

(3) the difficulty or unsettled natured of the applicable law,

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,

(5) the jurisdictional basis, if any, other than 28 U.S.C.

16

§ 1334,

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(7) the substance rather than form of an asserted "core" proceeding,

(8) the feasibility of serving state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9) the burden of [the bankruptcy court's] docket,

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

(11) the existence of a right to a jury trial, and

(12) the presence in the proceeding of nondebtor parties.

*In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990).

On balance, the aforementioned factors weigh against permissive abstention. The subject property is potentially of great importance to the estate, and therefore abstention may negatively impact the efficient administration of the estate. There is no indication that the state law governing the claim is particularly difficult, unsettled or otherwise ill-suited for hearing in this court. Furthermore, Plaintiff-Debtors' claim is closely related to the main bankruptcy case.

A well repeated legal principle is "justice delayed is justice denied."[9] For bankruptcy debtors, the inability to proceed with a reorganization and adjudication of the respective rights of the parties may well be the death knell of the reorganization. It has

---

[9] This legal maxim is often attributed to William Ewart Gladstone and William Penn. This concept was included in the Magna Carta, Clause 40, and Chief Justice Burger's comments in an address to the American Bar Association, August 10, 1970.

17

not been shown to this court that, to the extent the court does not exercise the grant of exclusive jurisdiction over property of the estate and to determine what is property of the estate, that the issue can and would be determined in state court in a manner which would not conflict with the reorganization in this case.

The motion for abstention is denied.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law. A separate order shall be issued consistent with the ruling in this decision.

Dated: November 29, 2011

RONALD H. SARGIS, Judge
United States Bankruptcy Court

18

This document does not constitute a certificate of service. The parties listed below will be served a separate copy of the attached document(s).

---

Adam Barasch
1 Embarcadero Center #2600
San Francisco, CA 94111

John Downing
10069 W River St #6C
Truckee, CA 96161

Scott CoBen
1214 F St
Sacramento, CA 95814

Recontrust, N.A.
Attn: Officer, Managing or General Agent for Service
1800 Tapo Canyon Rd
Simi Valley, CA 93063

G. Wendell Ulberg
PO Box 1024
Tahoe City, CA 96145

Kathleen Ulberg
PO Box 1024
Tahoe City, CA 96145

David Cusick
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814