FILED

OCT 2 2 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| In re | ) | Case No. 10-53637-E-13 |
| | ) | |
| G. WENDELL ULBERG, JR. and | ) | |
| KATHLEEN M. ULBERG | ) | |
| | ) | |
| Debtor(s). | ) | |
| ——————————————— | ) | |
| G. WENDELL ULBERG, JR. and | ) | Adv. Pro. No. 11-2122 |
| KATHLEEN M. ULBERG, | ) | Docket Control No. SW-4 |
| | ) | |
| Plaintiff(s), | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA, N.A., et | ) | |
| al., | ) | |
| | ) | |
| Defendant(s). | ) | |
| ——————————————— | ) | |

**PROPOSED**
**MEMORANDUM OPINION AND DECISION**
**CONSTITUTING FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**28 U.S.C. § 157(c)(1)**

This Adversary Proceeding was commenced by G. Wendell Ulberg, Jr. and Kathleen M. Ulberg ("Plaintiffs"), who are also Chapter 13 Debtors in a bankruptcy case pending before this court (Bankr. E.D. Cal. No. 10-53637). On March 15, 2011, Plaintiffs filed the First Amended Complaint ("FAC"), Dckt. 11, which is the complaint now at issue before this court. Two of the defendants in the Adversary Proceeding are Bank of America, N.A. ("BANA") and Recontrust Company ("Recontrust"), collectively the "BANA Defendants."

This Adversary Proceeding centers on the ownership of real property commonly known as 1382 Mineral Springs Trail, Alpine Meadows, California (the "Property").   Plaintiffs assert that a non-judicial foreclosure sale conducted for BANA on December 27, 2010, was improper and that any transfer of property alleged to have occurred pursuant thereto should be set aside.   The Plaintiffs also seek a monetary recovery from the BANA Defendants.

On November 29, 2011, the bankruptcy judge issued a Memorandum Opinion and Decision granting BANA's motion to dismiss with regard to the Third and Seventh Causes of Action, and denying the motion as to all other causes of action.[1]   The Third Cause of Action is for unfair business practices pursuant to California Business and Professions Code 17200 et seq.   The Seventh Cause of Action is for declaratory relief.   Recontrust was not a party to the motion to dismiss and is not included in the order thereon.[2]

The "BANA Defendants" have filed this Motion for Summary Judgment on all causes of action stated against each of them in the FAC.   For BANA, this is for the Fraud (First), Negligent Misrepresentation (Second), Rescission or Cancellation of Trustee's Deed (Fifth), Quite Title (Sixth), and Injunctive (Eighth) Causes of Action.   For Recontrust, summary judgment is sought for all of the preceding causes of action and also for the Unfair Business Practices (Third), Intentional Interference with Contractual

---

[1]   Dckt. 109. The ruling on the Motion to Dismiss pre-dated the ruling of the United States Supreme Court in *Stern v. Marshall*, 564 U.S. ____ , 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).   None of the parties objected to the bankruptcy judge entering the order on that motion and the bankruptcy court accepted such non-objection as consent to this court entering that order.

[2]   Order, Dckt. 110.

Relations (Fourth), and Declaratory Relief (Seventh) Causes of Action. Motion, Dckt. 171. The BANA Defendants are not parties to the Eighth Cause of Action, and BANA is not a party to the Fourth Cause of Action.

The Motion for Summary Judgment was properly served on the Plaintiffs, Plaintiffs' counsel, and the counsel for Pacific Crest Partners, Inc. ("Pacific Crest") and John Mudgett ("Mudgett"), the other two named defendants in this Adversary Proceeding, on March 28, 2013. Pursuant to Local Bankruptcy Rule 9014-1(f)(1), proper notice was provided. The Plaintiffs filed an opposition to the Motion for Summary Judgment. Pacific Crest and Mudgett, who are not parties to this Motion for Summary Judgment, filed a response.

## RELATION OF ADVERSARY PROCEEDING TO PLAINTIFFS' CHAPTER 13 CASE

This Adversary Proceeding is being conducted as part of Plaintiffs' Chapter 13 Plan. Plaintiffs confirmed their 5th Amended Chapter 13 Plan on October 25, 2011.[3] The confirmed Chapter 13 Plan (Section VII, Additional Provisions) provides for this litigation. The Chapter 13 Trustee is $2,000.00 of each monthly Chapter 13 Plan payment for the secured claim which would exist if the foreclosure is determined invalid or is rescinded, or to pay for damages to Pacific Crest (the party asserting that it purchased the Property at a foreclosure sale) from being wrongfully enjoined by the automatic stay (the equivalent of Fed. R. Civ. P.

---

[3] Order, Chapter 13 Plan; Chapter 13 Case Dckts. 125, 145.

3

Rule 65(c) damages).[4]

Determination of these non-bankruptcy issues by this federal court is necessary for the proper and timely exercise of rights and obligations under the Bankruptcy Code. The Chapter 13 Plan in this case is limited by the Bankruptcy Code to a period of no more than five years.[5] The Chapter 13 bankruptcy case having been filed in December 2010, and this adversary proceeding having been filed in February 2011 (reflecting diligent prosecution in this court by the Plaintiffs), abstaining pursuant to 28 U.S.C. § 1334(c)(1) is not practical. No contention has been made that the California Superior Court could conclude this matter within the Bankruptcy Code deadlines for the Chapter 13 Plan.

### NON-CORE RELATED TO ADVERSARY PROCEEDING
### No 11 U.S.C. § 157(d)(2) Consent

This Adversary Proceeding was commenced prior to the United States Supreme Court addressing the proper exercise of federal judicial power and federal court jurisdiction for cases under the Bankruptcy Code. *Stern v. Marshall*, 564 U.S. ____, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011). Because the issue arose after this

---

[4] The bankruptcy judge acknowledges that when filing bankruptcy becomes a viable option for many debtors, they will not have sufficient assets to obtain a bond to support an injunction in state or federal court. Debtors turn to the bankruptcy court and automatic stay in place of an injunction. As in the Plaintiffs' bankruptcy case, this court allows debtors to self fund a bond with what would be the monthly mortgage payment, with such monies held by the Chapter 13 Trustee. If the debtor is correct and the foreclosure sale is invalid, then a fund exists to make the post-petition mortgage payments. If the debtor fails and the foreclosing creditor or third party purchaser at the foreclosure sale has been wrongly detained by the injunction (the automatic stay), then this fund constitutes a bond from which the Rule 65(c) damages may be compensated.

[5] 11 U.S.C. § 1322(d).

4

Adversary Proceeding had been commenced, the bankruptcy judge allowed the parties to expressly consent on the record for the bankruptcy judge to issue orders and the judgment in this arguably non-core "related-to" matter.  28 U.S.C. §§ 1334(b) and 157(c)(2).

Not all parties to this Adversary Proceeding have consented to the bankruptcy judge entering final orders and the judgment in this proceeding.  Pursuant to 28 U.S.C. §157(c)(1), when consent has not been given for non-core related-to matters, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court.  The district court judge, after review of the proposed findings and conclusions, enters the final orders and judgment.

## ALLEGATIONS IN FIRST AMENDED COMPLAINT

Plaintiffs allege in the FAC that they were the owners of the Property and have lived there since 1986.  The Property was subject to two claims held by BANA which were secured by two separate deeds of trust: one claim with a balance of $218,741.00 and a second with a balance of $151,186.00.  BANA noticed a default and then scheduled a non-judicial foreclosure sale under one of the deeds of trust.  Plaintiffs assert that they submitted a loan modification application to BANA in June 2010 for a modification under the HAMP program. Plaintiffs represent that it is their understanding that the HAMP Guidelines prohibit foreclosure sales to be conducted while a loan is under HAMP review.

Plaintiffs further assert that in reliance on these representations, Plaintiffs stopped making payments while they awaited review of the requested loan modification.  Plaintiffs allege that they also refrained from taking any other actions to

protect their ownership in the Property, including not keeping their account current or filing for bankruptcy sooner.  It is alleged that BANA publically announced that there would be a moratorium on all foreclosure sales effective December 27, 2010.

Plaintiffs contend that on December 24, 2010, Mudgett, who is identified as a real estate salesperson for Pacific Crest, came to the Property and told Plaintiffs that the Property would be foreclosed on December 27, 2010.  Plaintiffs assert that they then informed Mudgett that a loan modification was pending with BANA.

Plaintiffs assert that prior to the December 27, 2010, Recontrust, the trustee under the Deed of Trust, was advised of Plaintiffs' bankruptcy.  When provided with this information, it is alleged that Recontrust represented that the file would be put into "bankruptcy status" and that the sale would not proceed.

Notwithstanding the above, Plaintiffs assert that Recontrust conducted a non-judicial foreclosure sale on December 27, 2010, with Pacific Crest purchasing the Property for $190,000.00.

## MOTION FOR SUMMARY JUDGMENT

Summary judgement is appropriate when there exists "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Supreme Court discussed the standards for summary judgment in a trilogy of cases, *Celotex Corporation v. Catrett*, 477 U.S. 317, 327 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  In a motion for summary judgment, the moving party bears the initial burden of persuasion in demonstrating that no issues of material fact exist.  *See, Anderson* at 255.  A genuine

issue of material fact exists when the trier of fact could reasonably find for the non-moving party. *Id*. at 248. The court may consider pleadings, depositions, answers to interrogatories and any affidavits. *Celotex* at 323. Where the movant bears the burden of persuasion as to the claim, it must point to evidence in the record that satisfies its claim. *Id*. at 252.

The BANA Defendants seek summary judgment as to all of the Causes of Action in the FAC. The court reviews the Motion and Responsive Pleadings as follows.

## Summary of BANA Defendants' Relief Sought and Grounds

### First and Second Causes of Action - Fraud and Negligent Misrepresentation

BANA Defendants state that around January 2010 Plaintiffs hired a foreclosure consultant, Sovereign Financial ("Sovereign"), to communicate with the BANA Defendants. Sovereign then acted as Plaintiffs' specialist representative to negotiate a loan modification for the subject property. When contacted by Sovereign, the BANA Defendants assert that (1) BANA never informed Plaintiffs that Plaintiffs were being considered for a loan modification and (2) BANA communicated to Sovereign, as Plaintiffs' representative, that Plaintiffs were not eligible for a loan modification.

Further, BANA contends that it never represented either to Plaintiffs directly or to Sovereign, as Plaintiffs' representative, that BANA would postpone the December 27, 2010 foreclosure sale. To the extent that there was any representation that the foreclosure sale would be postponed, the BANA Defendants contend that the evidence shows Plaintiffs relied only on representations

made by Sovereign.  To the extent that the "representation" by BANA
is based on Plaintiffs' belief that the foreclosure sale had to be
postponed due to the HAMP guidelines, such representations were
made by Sovereign, not BANA.

The BANA Defendants also assert Sovereign provided Plaintiffs
with documents needed to file for bankruptcy, and this was done
because both Sovereign and the Plaintiffs knew that there was no
representation by BANA that the non-judicial foreclosure sale would
be postponed.  The Plaintiffs attempted to file a bankruptcy case
in *pro se* the day of the sale, but were unsuccessful before the
non-judicial foreclosure sale was conducted on December 27, 2010.
In addition to the other BANA evidence, it is asserted that the
filing of the bankruptcy case attempting to stop the foreclosure
sale on December 27, 2010, demonstrates that there was no reliance
on any representation that the foreclosure sale would be postponed.

Further, it is asserted that Plaintiffs argue and present
evidence that Sovereign requested that the sale be postponed, which
indicates that Plaintiffs and Sovereign knew that there was no HAMP
or moratorium required postponement.  Further, that the evidence
shows that Plaintiffs were only told by Sovereign that Sovereign
would attempt to delay the sale, not that BANA stated that the
December 27, 2010 sale was postponed.

With respect to the Plaintiffs' contention that BANA
represented that there was a moratorium on BANA conducting
non-judicial foreclosure sales, Plaintiffs only make reference to
unidentified "news articles" which they purport constitute a public
statement by BANA.  In a footnote to the Motion BANA acknowledges
that it had a partial moratorium between December 20, 2010 and

8

January 2, 2011, but that the moratorium did not include loans owned by Fannie Mae (who the BANA testimony identifies as the owner of the loan for which the non-judicial foreclosure sale was conducted).

### Third Cause of Action – Unfair Business Practices
### Claim (Recontrust Only, Previously Dismissed as to BANA)

The BANA Defendants state that there is no evidence that Recontrust engaged in activity that can be construed as unlawful, unfair, or fraudulent competition.  These Defendants direct the court to the prior dismissal of this cause of action as against BANA.[6]  Recontrust states that Plaintiffs did not communicate directly with Recontrust and that Plaintiffs have not provided evidence that Recontrust made any statements to Sovereign. Recontrust argues that summary judgment on this cause of action is warranted since there is no evidence that any representations were made that would deceive the public. Recontrust states that it served as the foreclosure trustee and was not involved in the loan modification program.

### Fourth Cause of Action – Interference with
### Contractual Claims (BANA Not a Party to this Claim)

BANA Defendants argue that Plaintiffs have not satisfied the elements for this cause of action because no loan modification was ever submitted to BANA, and the Note and Deed of Trust do not include provisions that a foreclosure sale must be stayed pending approval of a loan modification.  Defendants argue that without a breach of contract there can be no interference with the

---

[6]    Memorandum Opinion and Decision, Dckt. 109.

9

contractual relationship between Plaintiffs and BANA by the BANA Defendants.  Further, that no evidence has been presented showing that Recontrust, as the trustee under the Deed of Trust, engaged in any conduct to induce BANA to take, or not take, any action.

### Fifth and Sixth Causes of Action – Restoration of Title and Quiet Title

The BANA Defendants state that there is no evidence to support the claim that the foreclosure sale should be reversed based on the aforementioned causes of action.  There is no independent basis in these causes of action for the relief requested.

### Seventh Cause of Action – Declaratory Relief

The BANA Defendants argue that the court should dismiss this claim against Recontrust for the same reason that the court dismissed the claim against BANA.[7]

### PLAINTIFFS' OPPOSITION

Plaintiffs respond that in May of 2010 they retained Sovereign to pursue a loan modification with BANA and that it was only through Sovereign that Plaintiffs submitted loan modification requests to BANA.  Plaintiffs contend that BANA reported the loan modification to be in active review and thereon continued the foreclosure originally scheduled for December 13, 2010, to December 27, 2010.

Plaintiffs assert that they relied on representations by BANA that the December 27, 2010 foreclosure sale would be continued. Additionally, based on Plaintiffs' understanding of the HAMP Guidelines a foreclosure sale could not go forward if their loan

---

[7]  Memorandum Opinion and Decision, Dckt. 109.

modification was in active review.  Further, Plaintiffs assert that they relied on their belief that BANA announced (which the evidence shows to be a newspaper article read by Plaintiffs) a moratorium on foreclosures through the continued December 27, 2010, foreclosure sale date.

### First and Second Cause of Action – Fraud and Negligent Misrepresentation

Plaintiffs argue that the BANA Defendants have failed to refute the allegations in the FAC because the BANA Defendants have not provided testimony from the persons who were working on the Plaintiffs' loan and the foreclosure sale.  Plaintiffs argue that the Declaration of Karen Slyapich (BANA employee) is not reliable since it is unclear as to whether Ms. Slyapich worked at BANA in 2010 and there is no foundation for her testimony.

Plaintiffs assert that BANA actually received the loan modification request despite statements to the contrary, and that the October 25, 2010 reinstatement letter alleged to have been sent by BANA was not sent to Plaintiffs at an accurate mailing address (it being sent to the property street address when mail is only delivered to the Plaintiffs' post office box).  Plaintiffs contend that to the extent that the alleged misrepresentations do not constitute fraud, they are material misrepresentations, due to negligence or recklessness, concerning the Plaintiffs loan and the scheduled foreclosure. Plaintiffs assert that there are triable issues of fact as to whether Defendants made such alleged misrepresentations.

///

///

11

**Third Cause of Action - Unfair Business Practices Claim (Recontrust Only, Previously Dismissed as to BANA)**

The Plaintiffs do not oppose summary judgment being granted the BANA Defendants on the Third Cause of Action.

**Fourth Cause of Action - Intentional Interference with Contractual Relations**

Plaintiffs argue that they were prevented from performing under the note and deed of trust, from completing the loan modification, and from reinstating the loan when Recontrust conducted the December 27, 2010 non-judicial foreclosure sale.

**Fifth, Sixth, and Seventh Causes of Action - Cancel Trustee's Deed, Quite Title, and Declaratory Relief**

Plaintiffs argue that because there are triable issues of fact with respect to the first, second, and fourth causes of action, there are also triable issues of fact with respect to the Fifth, Sixth, and Seventh Causes of action.

**REVIEW OF EVIDENCE PRESENTED BY BANA DEFENDANTS**

The evidence presented by the BANA Defendants in support of the Motion for Summary Judgment includes the following:

**Declaration of Karen Slyapich, Dckt. 174.**

The first witness is Karen Slyapich, who provides her declaration in support of the Motion. Ms. Slyapich's testimony is summarized as follows.

A. Karen Slyapich ("Slyapich") is an Assistant Vice President of BANA and authenticates the Bank documents presented in support of the Motion.

B. In April 2004 the Plaintiffs borrowed $247,000.00 from BANA ("2004 Loan"), which loan is secured by a deed of trust

against the Property. Note evidencing the 2004 Loan and Deed of Trust, Exhibits A and B, respectively. Dckt. 179.

C. The 2004 Loan was sold by BANA to the Federal National Mortgage Association ("Fannie Mae").

D. BANA retained the servicing rights for the 2004 Loan.

E. On August 6, 2010, Recontrust, the trustee under the deed of trust, issued a Notice of Default and Election to Sell under the Deed of Trust which secured the 2004 Loan. Notice of Default, Exhibit C. *Id.*

F. In November 2010, a Notice of Trustee's Sale under the Deed of Trust was issued and recorded on November 19, 2010, with a Trustee's Sale set for December 13, 2013. Notice of Trustee's Sale, Exhibit D. *Id.*

G. The Trustee's Sale was postponed to December 27, 2010.

H. On December 27, 2010, the Trustee's Sale was conducted by Recontrust. A Trustee's Deed was issued to Pacific Crest as the successful purchaser at the sale. Trustee's Deed, Exhibit D. *Id.*

I. BANA maintains a record of its communication with borrowers. A copy of the communications relating to the 2004 Loan during the Fall of 2010, is filed as Exhibit F. *Id.* These records disclose the following communications.

1. On October 22, 2010, a call was received by BANA by an unnamed representative of the Plaintiffs requesting a loan modification for the 2004 Loan. Financial information was submitted over the phone and the caller was informed that the Plaintiffs did not qualify for a loan modification.

2. On October 22, 2010, BANA received a call from an unnamed representative of the Plaintiffs again requesting a loan

modification for the 2004 Loan.  Though the financial information was different, the Plaintiffs' representative was again notified that the Plaintiffs did not qualify for a loan modification.

3.  On November 18, 2010, BANA received a call from a representative (identified in the notes as Candy Cabrera) requesting the status of the loan modification for the 2004 Loan. The note states that Ms. Cabreara was advised that the 2004 Loan was a Fannie Mae loan and needed to be transferred.  The note further states that the BANA representative could not transfer the call.

4.  On November 29, 2010, Jamie Cabrera from Sovereign called BANA to check on the status of the loan modification for the 2004 Loan.  The notes state that the call was transferred to the Fannie Mae "Foreclosure Q."

5.  On December 6, 2010, a call was received from "h/o" to check on the status of the loan modification for the 2004 Loan. The notes state that "the h/o is not in reveiw right now or needing any docs at this time so i advised th h/o to call back in check the status of the loan mod.nbkweof." (sic.)

 a.  On December 21, 2010, four calls were made to BANA by a representative of the Plaintiffs requesting information regarding the status of the loan modification for the 2004 Loan.

 (1)  For the first call, the notes state that there were no updates and the representative was given the modification number and the call transferred.

 (2)  The second call entry states that it

14

was transferred to the home retention department ("hrd").

(3)   The third call entry states that Jamie Cooper from Sovereign called and was advised that the 2004 Loan was not in a modification.

(4)   The fourth call is from an unnamed representative of the Plaintiffs, who was told that the 2004 Loan was not in modification.

6.   Slyapich has reviewed the records of BANA and found no record of a loan modification being submitted by Plaintiffs.

7.   During the period from December 20, 2010, through January 2, 2011, BANA had in place a partial moratorium on foreclosures.  The moratorium did not include Fannie Mae owned loans, such as the 2004 Loan.

**Declaration of Bernard Kornberg, Dckt. 713.**

A.   Bernard Kornberg is an attorney of record for the BANA Defendants in this Adversary Proceeding.

B.   Mr. Kornberg authenticates the following Exhibits:

1.   Exhibit H, excerpts from November 1, 2012, deposition of Plaintiff George Wendell Ulberg, Jr. ("G. Wendell Ulberg").

2.   Exhibit I, excerpts from November 1, 2012, continued deposition of Plaintiff G. Wendell Ulberg.

3.   Exhibit J, excerpts of G. Wendell Ulberg's responses to the BANA Defendants Request for Admissions.

4.   Exhibit K, excerpts of G. Wendell Ulberg's responses to the BANA Defendants Special Interrogatories, Set One.

**Exhibits H and I, Excepts of November 2, 2012 Deposition of George Wendell Ulberg, Jr., Dckt. 179, pgs. 47-158.**

### Exhibit H

A.  G. Wendell Ulberg filed an application for a loan modification with Sovereign.  Reporter's Transcript ("RT") 13:2-4.

B.  Sovereign is a company that assists borrowers in obtaining loan modifications.  RT 13:17-18.

C.  G. Wendell Ulberg did not submit a loan modification application directly to BANA, but provided documents and information to Sovereign, which was responsible for submitting the loan modification application to BANA.  RT 14:19-21; 34:18-23.

D.  The persons at Sovereign with whom G. Wendell Ulberg communicated were Candi Cabrera, Jamie Cabrera, and Candy Bronzi.  RT 13:22-25, 14:1-12; 54:7-9.

E.  Representatives of Sovereign "intimated" that a loan modification for the 2004 Loan was in process. RT 63:10-17.

F.  The representatives of Sovereign told G. Wendell Ulberg that a foreclosure would not occur if the 2004 Loan was in active loan modification.  No one at or for BANA represented that the foreclosure would be postponed if the 2004 Loan was in active loan modification.  RT 54:4-9.

G.  G. Wendell Ulberg relied on Sovereign to present and move the loan modification with BANA and for any postponements of the foreclosure sale for the Deed of Trust securing the 2004 Loan.  RT 63:14-21; 75:1-7; 76:7-10.

H.  G. Wendell Ulberg never contacted BANA to confirm that the loan modification for the 2004 Loan had been submitted by Sovereign.  RT 64:25, 65:1:10; 69:22-25, 70:1-14.

I.   Nobody at Sovereign ever told G. Wendell Ulberg that the loan modification application for the 2004 Loan had been approved or denied.   RT 73:6-12.

J.   G. Wendell Ulberg's knowledge of the BANA moratorium on foreclosures was obtained from news accounts and Sovereign, not from anyone at BANA.   RT 80:6-22; 81:6-19.

K.   Sovereign did not advised G. Wendell Ulberg that the foreclosure on the Deed of Trust securing the 2004 Loan could not go forward due to a foreclosure moratorium.   RT 81:2-5.

L.   G. Wendell Ulberg was advised of postponements of the non-judicial foreclosure sale by Sovereign. RT 83:10-17; 85:21-23.

M.   Jamie Cabrera of Sovereign advised G. Wendell Ulberg that a postponement of the December 27, 2010 foreclosure sale was highly unlikely.   RT 84:1-5.

N.   Jamie Cabrera of Sovereign advised G. Wendell Ulberg that Mr. Cabrera would try to get the December 27, 2010 foreclosure sale postponed.   RT 86:10-16.

O.   Jamie Cabrera of Sovereign provided G. Wendell Ulberg with forms and recommended that G. Wendell Ulberg file bankruptcy. RT 90:17-25, 91:1-22.

P.   G. Wendell Ulberg mistakenly, at the direction of Jamie Cabrera of Sovereign, went to the County Assessor's Office in Auburn, California, to file bankruptcy on the morning of December 27, 2010.   RT 94:1-14.

Q.   G. Wendell Ulberg arrived at the U.S. Bankruptcy Court in Sacramento, California, at approximately 10:00 a.m. on December 27, 2010.   He did not have all of the necessary forms provided to him by Sovereign, and obtained additional required forms from the

Court.  After completing the additional forms, G. Wendell Ulberg states that he filed the bankruptcy documents at 11:01 a.m. on December 27, 2010. [11:01 a.m. is the filing time stamped on the bankruptcy petition filed by the Plaintiffs.  10-53637 Dckt.1.] RT 96:19-25; 97:1-6.

## REVIEW OF EVIDENCE PRESENTED BY PLAINTIFFS

**Declaration of G. Wendell Ulberg, Dckt. 184.**

The testimony of G. Wendell Ulberg in opposition to the Motion for Summary Judgment is summarized as follows.

A.   In December 2010 the Plaintiffs owned the Property.

B.   In May 2010, Plaintiffs entered into a contract with Sovereign to prepare a loan modification request to be submitted to BANA pursuant to the HAMP Program.

C.   It was G. Wendell Ulberg's understanding (from an unstated source) that the HAMP Guidelines were applicable to BANA for the loan and that BANA could not foreclose "while loan modifications were in active review."

D.   In August 2010, Candy Bronzi of Sovereign informed G. Wendell Ulberg that BANA would send a Reinstatement Letter and allow the Plaintiffs to bring their loan current over time.

E.   On September 24, 2010, Stephanie Bailey, with BAC Field Services (a BANA related entity) appeared at the Property to verify that it was occupied.  G. Wendell Ulberg states that he told Ms. Bailey that a loan modification was pending.  Ms. Bailey gave G. Wendell Ulberg a phone number to call, which G. Wendell Ulberg did and told the person (not identified in the declaration) at that number "[t]hat through Sovereign Financial, we had submitted a loan modification package."

18

F.  The Plaintiffs did not receive the October 25, 2010 letter from BANA, Exhibit G.  The letter is addressed to the street address for the Property, but the Postal Service does not deliver mail to the street address.  BANA sends the loan account statements to the Plaintiffs' Post Office Box.  The letter states that BANA asserted $9,667.44 was due on the loan, and if the Plaintiffs had received the letter they would have borrowed the money from family members to bring the loan current.

G.  G.  Wendell Ulberg also testifies that it was his "understanding" based on (unidentified) news reports that BANA issued a moratorium on all foreclosure sale in California up and through December 27, 2010.  He testifies that the news reports did not distinguish between Fannie Mae and non-Fannie Mae loans.

H.  Further, that he "[r]elied on these news reports in not taking more steps to protect my house from foreclosure."

I.  Stephanie Bailey, the BAC Field Services representative who checked the occupancy of the Property did not tell G. Wendell Ulberg that the foreclosure sale was continued to December 27, 2010.  G. Wendell Ulberg testifies that all she told him is that she was there to verify occupancy.

J.  On December 24, 2010, Mudgett came to the Property.  He told G. Wendell Ulberg that the foreclosure sale was set for December 27, 2010.

K.  G. Wendell Ulberg testifies that prior to December 24, 2010, "I had relied on the statements from [BANA] to my agent Sovereign that my residence would not be foreclosed on while my loan modification request was under active review."

///

19

L.   If not for their reliance on the foreclosure sale having to be postponed, the Plaintiffs would have taken other steps to stop the foreclosure sale, including borrowing money from other family members or retaining bankruptcy counsel.

M.   G. Wendell Ulberg believes that the Property has a value of $450,000.00 when the bankruptcy case was filed.   The Property secured the BANA loan in the amount of $220,447.00 secured by the First Deed of Trust and another loan in the amount of $151,000.00 secured by a Second Deed of Trust against the Property.

**Declaration of Jamie Cabrera filed March 15, 2011, in Support of Motion for Preliminary Injunction in this Adversary Proceeding,   Exhibit 1, Dckt. 183.**

Jamie Cabrera provides the following testimony in opposition to the Motion for Summary Judgment.

A.   Jamie Cabrera is an Advocacy Specialist with Sovereign, having been employed in that capacity for two years.

B.   On or about August 27, 2010, Plaintiffs retained Sovereign to assist them with obtaining a modification of the loan secured by the Property.

C.   At that time Sovereign submitted a loan modification request to BANA under the HAMP Program.

D.   It was Jamie Cabrera's understanding (from an unidentified source or base of knowledge) that under the HAMP Program Guidelines, BANA could not proceed with a foreclosure sale if a loan modification request was under "active review."

E.   During August, September, and October, 2010, there were seven communications with BANA confirming the receipt of financial information from Sovereign concerning the Plaintiffs.   Sovereign sent all of the financial information timely to BANA.

F.   Jamie Cabrera discussed with BANA a postponement of the December 7, 2010 scheduled non-judicial foreclosure sale.   Jamie Cabrera testifies that the BANA representative stated that the sale should be postponed because a loan modification was under active review.

G.   Jamie Cabrera testifies that in a December 9, 2010, phone conversation with "Joel" at BANA, confirmed that the Plaintiffs' loan modification request was under active review.

H.   Jamie Cabrera testifies that in a December 17, 2010, phone conversation with Lee at BANA, represented that the Plaintiffs' loan modification request was under active review, and that a request for postponement of the December 27, 2010 foreclosure sale had been made (to an unidentified person).

I.   On December 27, 2010, Jamie Cabrera spoke with Kimberly, a representative with Recontrust, concerning the non-judicial foreclosure sale which was set for 9:15 a.m. and to inform Recontrust that the Plaintiffs would be filing bankruptcy.   A copy of the filed bankruptcy petition was forwarded by Jamie Cabrera to Recontrust.

**Declaration of Michael Mankarious**

Michael Mankarious provides the following declaration in opposition to the Motion for Summary Judgment.

A.   Mr. Mankarious is the chief financial officer of Sovereign.

B.   Exhibit 2 is a record of the contacts by representatives of Sovereign with BANA concerning the Plaintiffs' loan.

C.   In Sovereign's files Mr. Mankarious located two 70-page loan modification requests.   He states that these were sent by

facsimile to BANA on December 13, 2010, and December 18, 2010. Exhibits 3 and 4 filed in opposition to the Motion for Summary Judgment are portions of the two loan modification requests.

   D.  Exhibit 5 is an excerpt from the HAMP Program Guidelines. Mr. Mankarious directs the court to Section 3.2 which states that a servicer of a loan, upon acceptance of a request for HAMP consideration, must suspend any pending foreclosure sale.

   E.  Mr. Mankarious states that the Plaintiffs' situation is one in which the HAMP Guidelines were not followed and the loan was "Double Tracked," with the foreclosure proceeding while a HAMP loan modification was pending with BANA.

   F.  Exhibit 6 is a copy of Sovereign's telephone and fax records for December 13, 2010, which he states shows the transmission of a document to BANA at 5:50 p.m.

   G.  Exhibit 7 is a copy of Sovereign's telephone and fax records which he states shows the transmission of the loan modification request to BANA on December 20, 2010.

## UNDISPUTED FACTS OR THOSE FOR WHICH THERE ARE NO GENUINE DISPUTES

### Agreed Undisputed Facts

   The following undisputed facts have been agreed to by the parties. *See* BANA Defendant's Statement of Undisputed Facts, Dckt. 177, and Plaintiff's Response to Undisputed Facts, Dckt. 185. The numbering is that used by the BANA Defendants in the Statement of Undisputed Facts, with of the alleged not undisputed designated by the word "Disputed."

*///*

*///*

| Fact Number, BANA Defendants' Statement | Undisputed Fact | Disputed Fact |
|---|---|---|
| 1 | Plaintiff G. Wendell Ulberg is and has been a self-employed licensed real estate agent since 1985. | |
| 2 | As part of his profession, G. Wendell Ulberg has, on multiple occasions, represented parties purchasing property in foreclosure sales. | |
| 3 | G. Wendell Ulberg was responsible for all communications with Defendants and with Sovereign Financial, his loan modification consultant. | |
| 4 | Kathleen Ulberg did not take part in the efforts to receive a loan modification or have any communication with BANA. | |
| 5 | Plaintiffs owned and resided in the property known as 1382 Mineral Springs Trail, Alpine Meadows, CA 94146 (the "Property") since 1986. | |
| 6 | In April of 2004, BANA issued a note (the "Note") to Plaintiffs so that they could borrow $247,000 for the purpose of repairing and remodeling the Property (the "Loan"). | |
| 7 | To secure the obligation, Plaintiffs entered into a deed of trust against the Property (the "Deed of Trust"). The Deed of Trust named BANA as beneficiary. | |
| 8 | | Disputed |
| 9 | BANA retained the servicing rights to the loan. | |
| 10 | In 2010, Plaintiffs ran into financial difficulties and defaulted on the Loan. | |
| 11 | On August 6, 2010, Recontrust issued a notice of default and election to sell under deed of trust (the "Notice of Default"). | |
| 12 | The Notice of Default was posted on the Property and subsequently recorded on August 9, 2010 in the Placer County recorder's office. | |
| 13 | The Notice of Default listed Plaintiffs arrears as $6,044.34 as of October 6, 2010. | |

| 14 | Plaintiffs were aware of their default and that it could lead to the foreclosure of the Property. | |
| 15 | In November of 2010, a notice of trustee's sale (the "Notice of Trustee's Sale") was issued and subsequently recorded on November 19, 2010. | |
| 16 | The Notice of Trustee's Sale set the sale date for December 13, 2010 at 9:30 a.m. | |
| 17 | The Notice of Trustee's Sale was posted on the Property and Plaintiffs received it. | |
| 18 | The foreclosure sale was postponed from December 13, 2010 to December 27, 2010. | |
| 19 | On December 27, 2010, a foreclosure sale was held by the foreclosure trustee, defendant Recontrust. | |
| 20 | | Disputed |
| 21 | A Trustee's Deed Upon Sale was issued and recorded on January 5, 2011, memorializing the sale. | |
| 22 | Around January of 2010, Plaintiffs began discussions with a company doing business under the name of Sovereign Financial ("Sovereign"). | |
| 23 | Plaintiffs had communications with three different individuals at Sovereign: Candi Cabrera, Jamie Cabrera, and Candy Bronzi. | |
| 24 | The purpose of contacting Sovereign was to retain them to attempt to negotiate loan modifications on the Property. | |
| 25 | On or around May 24, 2010, Plaintiffs entered into a contract with Sovereign to procure a loan modification on the Property. | |
| 26 | Plaintiffs then made an upfront payment of $900 to engage Sovereign to assist Plaintiffs in obtaining a loan modification. | |
| 27 | Around June of 2010, Sovereign informed Plaintiffs by phone and email that they had submitted a loan modification application regarding the Property to BANA. | |
| 28 | Sovereign never sent Plaintiffs a copy of the submitted loan modification application. | |
| 29 | | Disputed |

| 30 | | Disputed |
|----|---|----------|
| 31 | | Disputed |
| 32 | | Disputed |
| 33 | An agent employed by BANA came by several times to confirm that Plaintiffs remained in the Property, but never made any representations to Plaintiffs regarding the sale of the Property. | |
| 34 | Plaintiffs contacted BANA several times regarding payment issues on their online account. | |
| 35 | In November of 2010, Plaintiffs contacted BANA directly by phone around three times. | |
| 36 | Plaintiffs never requested the reinstatement balance of their loan directly from BANA. (Plaintiffs qualifying the admission asserting in their Response that it was through Sovereign that such a request was made to BANA.) | |
| 37 | BANA never made any representations directly to Plaintiffs regarding postponement of the foreclosure sale or the loan modification application.  (Plaintiffs qualifying the admission asserting that any representations were made to Sovereign.) | |
| 38 | BANA never sent Plaintiffs anything in writing stating that the foreclosure sale would be postponed. | |
| 39 | Plaintiffs relied completely on Sovereign to communicate with BANA Defendants regarding both the loan modification process and the postponement of the foreclosure sale. | |
| 40 | | Disputed |
| 41 | Sometime shortly before December 13, 2010, Sovereign informed Plaintiffs that the foreclosure sale had been postponed, but did not say to what date. | |
| 42 | Sovereign representative told G. Wendell Ulberg that they believed they could get the sale postponed due to the loan being reviewed for a modification. | |
| 43 | Until December 23, 2010, Plaintiffs were not aware that the sale date had been continued to December 27, 2010. | |

| 44 | | Disputed |
|---|---|---|
| 45 | On December 23, 2010, Sovereign stated that they would push Defendants to postpone the sale date because Sovereign believed it was highly unlikely that Defendants would foreclose with only a fourteen-day continuance of the sale date. | |
| 46 | On December 23, 2010, Sovereign informed Plaintiffs that they would try to get the foreclosure sale postponed. | |
| 47 | Sovereign never told Plaintiffs that BANA stated it would postpone the sale date past the December 27, 2010 sale date. | |
| 48 | December 24, 2010, Mudgett, a representative of Pacific Crest, went to Plaintiffs' house. He spoke to G. Wendell Ulberg and informed him that he was going to try to purchase the Property on behalf of Pacific Crest and the sale remained set for December 27, 2010. | |
| 49 | | Disputed |
| 50 | | Disputed |
| 51 | Plaintiffs decided definitively to file for bankruptcy on December 26, 2010. | |
| 52 | Early on December 27, 2010, the date of the foreclosure sale, G. Wendell Ulberg left the Property to file his bankruptcy petition with the intent of filing it at 8:00 a.m. - before the foreclosure sale was set to occur. | |
| 53 | Sovereign initially informed G. Wendell Ulberg that the proper place to file the petition was in the Placer County Assessor's Office. | |
| 54 | G. Wendell Ulberg arrived at the Placer County's Assessor's Office at 8:00 a.m. on December 27, 2010. | |
| 55 | Upon arriving at the Placer County Assessor's Office at, G. Wendell Ulberg found that he could not file for bankruptcy there. | |
| 56 | Upon finding out he was in the wrong location to file bankruptcy, G. Wendell Ulberg headed to Sacramento to file the petition at the bankruptcy clerk's office. | |

| 57 | Upon reaching the United State Bankruptcy Court in Sacramento, G. Wendell Ulberg was further delayed in filing for bankruptcy as Sovereign had not provided him the correct forms to file for bankruptcy. | |
|---|---|---|
| 58 | | Disputed |
| 59 | Plaintiffs filed for bankruptcy on 11:01 a.m. on December 27, 2010. | |
| 60 | | Disputed |
| 61 | Plaintiffs believed there was a foreclosure moratorium because they thought they read in the news that the State of California had announced one. | |
| 62 | | Disputed |
| 63 | Plaintiffs never directly requested a reinstatement letter from BANA but were informed by Sovereign that Sovereign had requested the reinstatement letter. | |
| 64 | | Disputed |
| 65 | | Disputed |
| 66 | The sole reliance Plaintiffs plead in their first cause of action for fraud is that "Plaintiffs stopped making payments to allow review of their loan modification and refrained from actions to protect their interest in the Property, including without limitation, using their other resources or borrowing money in order to keep the account current, or filing a Chapter 13 bankruptcy to cure their arrears." | |
| 67 | The sole reliance Plaintiffs plead in their second cause of action for negligent misrepresentation is that "Plaintiffs stopped making payments to allow review of their loan modification and refrained from actions to protect their interest in the Property, including without limitation, using their other resources or borrowing money in order to keep the account current, or filing a Chapter 13 bankruptcy to cure their arrears." | |
| 68 | | Disputed |
| 69 | | Disputed |
| 70 | Plaintiffs never read the HAMP guidelines. | |

| 71 | Plaintiffs' cause of action in the FAC for Unfair Business Practices was dismissed as to BANA without leave to amend. | |
|---|---|---|
| 72 | Plaintiffs never communicated directly with Recontrust. | |
| 73 | Plaintiffs' belief that Recontrust would continue the sale was based solely on Sovereign's communications to Plaintiffs. | |
| 74 | This Court, in ruling on the motion to dismiss the FAC as to the misrepresentation prong of the UCL, found that Plaintiffs had not pled any facts that indicated that BANA made statements that would likely deceive the public.  (Memorandum Opinion, Ex. N, 15:21-23) | |
| 75 | This Court dismissed Plaintiffs claims in the FAC that BANA's loan modification program constituted an unfair business practice under the UCL because "the First Amended Complaint does not include any allegations about the Bank of America, N.A. loan modification program."  (Memorandum Opinion, Ex. N, 16:25-27) | |
| 76 | Plaintiffs' cause of action in the FAC for Declaratory Relief was dismissed as to BANA without leave to amend.   (Order on Bank of America, N.A.'s Motion to Dismiss Adversary Proceeding, Ex. O Memorandum Opinion, Ex. N, 20:26) | |
| 77 | The Note and the Deed of Trust are entirely bare of any provisions that provide that a foreclosure sale must be stayed pending submission of a loan modification application. | |
| 78 | The Deed of Trust provides that upon default Recontrust has a power of sale that may be exercised against the Property. | |

**Material Facts for Which There is no Genuine Dispute**

There are few facts in dispute as set forth in the declarations, discovery transcripts, and exhibits.  With respect to the declarations, this bankruptcy judge considers declarations to likely be the best testimony a witness could provide.  Declarations are prepared in the calm of the attorney's office, reviewed by the witness at a non-hostile, familiar situs (usually the witness's own

office or home), the witness can provide corrections and input to the attorney, and then only after the declaration has been carefully refined is it signed by the witness. The declarations in connection with the present Motion have been prepared after the close of discovery (January 31, 2013), which was 23 months after the original complaint was filed.

There is no evidence that the BANA Defendants made any representations directly to the Plaintiffs that the foreclosure sale was not being conducted or being postponed from the December 27, 2010 date. Rather, the Plaintiffs testify that all statements were made to Sovereign, as the representative of Plaintiffs. No testimony is provided by Sovereign that anyone at BANA represented that the December 27, 2010 non-judicial foreclosure sale would be postponed.

At best, the Plaintiffs' testimony is that Sovereign told them that the foreclosure would have to be stayed because of the "pending loan modification." With respect to a loan modification, the best the Plaintiffs could provide at their deposition was the statement that Sovereign "intimated" that a loan modification for the 2004 Loan was in process.[8] Jamie Cabrera testifies that the BANA representative stated that the sale should be postponed because a loan modification was under active review – however, there is no testimony that the BANA representative said that the sale would be postponed. With respect to continuance of the non-judicial foreclosure sale, again, the Plaintiffs cannot provide evidence that the BANA Defendants told the Plaintiffs or Sovereign

_____

[8]  RT 63:10-17.

that the sale would be continued from the December 27, 2010 date.

For the contention that the sale "had to be continued under HAMP," Plaintiffs did not present evidence that this loan and foreclosure were subject to a stay pending any decision on a loan modification. Michael Mankarious is provided as a witness to testify concerning the application of HAMP to this loan. No request was made and Mr. Mankarious was not admitted as an expert witness, to the extent that he could provide testimony as to the operation of the HAMP Guidelines. Mr. Mankarious throws to the court a "Handbook for Servicers of Non-GSE Mortgages" in support of his testimony.[9] This exhibit is an excerpt of what appears to a document more than 63 pages in length. (The pages provided by Mr. Mankarious skip from page "3" of the table of contents to page "52.") The court has not been presented with any law or evidence as to why, if there was a loan modification review in process, this loan would be subject to a mandatory postponement of a foreclosure.

What is clear from the Plaintiffs testimony is that any expectation they had that the foreclosure sale would be postponed came from Sovereign, not the BANA Defendants. In the FAC, the Plaintiffs allege that in June 2010, they submitted "a full, complete loan modification request to Bank of America pursuant to the Government's HAMP Program." However, Michael Mankarious now testifies that it was on December 13, 2010, and December 18, 2010, that Sovereign faxed two 70-page loan modification packages to BANA. No evidence has been presented by Sovereign with respect to

---

[9]  Exhibit 5, Dckt. 183.

an earlier loan modification request having been sent to BANA by Sovereign.

The testimony provided by the BANA Defendants is consistent with that of Mr. Mankarious. Slyapich (BANA Asst. V.P.) testifies and provides information from the books and records of BANA. On October 22, 2010, a telephonic request was made for a loan modification by an unidentified representative of the Plaintiffs. The records reflect that the request for a loan modification failed based on the financial information provided.[10] There is a similar entry for October 25, 2010.

The phone entry for November 18, 2010, is for a conversation with Candy Cabrera (authorized Sovereign third-party representative of the Plaintiffs), which states that Jamie Cabrera was advised that the foreclosure was in process, but a sale date had not yet been set. The entry also states, "Informed 3rd Party that since loan was a FNMA Loan I would need to transfer." This is consistent with Slyapich's testimony that this loan was owned by Fannie Mae, and therefore not subject to any foreclosure moratorium which could have been in place for any BANA owned loans.

At the end of the day, the evidence is uncontradicted that the Plaintiffs relied on their specialist, Sovereign, for any loan modification applications being submitted, the legal effect of any such loan modification applications, and whether the pending foreclosure sale would be postponed. The Plaintiffs did not rely on any representations from the BANA Defendants. Further, the Plaintiffs have not provided the court with any evidence or law as

---

[10]   Exhibit F, Dckt. 179.

to the December 27, 2010 foreclosure sale had to be postponed.

**RULING**

Based on the evidence provided and the undisputed facts and material facts for which there is no genuine dispute, the BANA Defendants are entitled to judgment on all of the remaining causes of action as they apply each of these respective defendants.

**First and Second Causes of Action: Fraud and Negligent Misrepresentation**

The First and Second Causes of Action are for fraud and negligent misrepresentation. Under California law, the elements of fraud are "(a) misrepresentation, (b) defendant's knowledge of the statement's falsity, (c) Intent to . . . induce action in reliance on the misrepresentation[], (d) justiciable reliance, and (e) resulting damage." *Flaxel v. Johnson*, 541 F. Supp. 2d 1127, 1145 (S.D. Cal. 2008) (quoting *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1184 (1993)). For a negligent misrepresentation claim, Plaintiffs must present some evidence of the same grounds as fraud, except rather than having to show a knowledge of falsity, it is shown that the maker of the false statement had no reasonable grounds for believing that the statement was true. *Glenn K. Jackson, Inc. v. Roe*, 273, F.3d 1192, 1200 n.3. The California Supreme Court has addressed this tort as one of "deceit," arising under California Civil Code § 1710 ¶ 2, providing, "A deceit, within the meaning of the last section [Cal Civ. § 1709. Fraudulent Deceit], is either:...2. The assertion, as a fact, of that which is not true, by one who has no reasonable grounds for believing it to be true;..." *Gagne v. Bertran*, 43 Cal. 2d 481, 487-488 (1954). *See, City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith,*

32

*Inc.*, 68 Cal. App. 4th 455, 482 (1998).

Here, there is no genuine issue as to the BANA Defendants, namely BANA, making representations to Plaintiffs or Sovereign, as Plaintiffs' representative, that (i) that Plaintiffs' loan was under review for modification and (ii) that the foreclosure sale would be postponed pending review of the loan modification. Plaintiffs have not provided evidence of Plaintiffs' loan modification requests with BANA except a three-page HAMP Modification Request Form dated December 13, 2010 (for a loan ending in 3555) and a three-page HAMP Modification Request Form dated December 18, 2010 (for a loan ending in 2084).[11]

Michael Mankarious (Sovereign CEO) testifies that his review of the Sovereign fax records show that two 70-page loan modification requests were faxed to BANA, one on December 13, 2010, and the other on December 18, 2010.  He states that Exhibits 3 and 4 are the first three pages of each of the loan modifications.  Mr. Mankarious provides no testimony as to why 140 pages of loan modification request forms were being faxed in mid-December 2010 if Sovereign had been actively working on the loan modification requests since May 2010.  Mr. Mankarious and the other Sovereign witnesses do not provide any testimony (1) that BANA represented to Sovereign that the December 27, 2010 foreclosure sale would be postponed or (2) that loan modification request documents being faxed to BANA on December 13, 2010, and December 18, 2010, would cause the December 27, 2010 foreclosure sale to be postponed.

The parties do not dispute that Plaintiffs relied on

---

[11]  Plaintiffs' Exhibits 3, 4.

1  statements made by Sovereign, Plaintiffs' representative, to the

2  extent  Plaintiffs  relied  on  anyone's  statements  that  the

3  non-judicial foreclosure sale would, or was required under the HAMP

4  Guidelines, be postponed.  Further, there is no dispute that prior

5  to December 27, 2010, the Plaintiffs and Sovereign were aware that

6  the  non-judicial  foreclosure  sale  would  not  be  postponed.

7  Sovereign prepared bankruptcy documents for the Plaintiffs and

8  planned with the Plaintiffs for the filing of a bankruptcy case on

9  the morning of December 27, 2010.  The evidence is uncontradicted

10 that the Plaintiffs were not relying on any representation, even

11 that of Sovereign, that the December 27, 2010 foreclosure sale

12 would be postponed.

13      There being no disputed factual issue and Plaintiffs being

14 unable  to  satisfy  the  elements  of  a  fraud  or  negligent

15 misrepresentation claim, the motion is granted as to the First and

16 Second Causes of Action.

17 **Third Cause of Action - Unfair Business Practices**

18      The third cause of action is for unfair business practices as

19 alleged against Defendant Recontrust. California Business and

20 Professions Code section 17200 provides that unfair business

21 practices include, "any unlawful, unfair or fraudulent business act

22 or practice and unfair, deceptive, untrue or misleading advertising

23 and any action prohibited by Chapter 1 (commencing with Section

24 17500)."  Section 17500 includes "false or misleading statements."

25 However, "The 'fraud' prong of the Business and Processions Code

26 section 17200 is unlike common law fraud or deception. A violation

27 can be shown even if no one was actually deceived, relied upon the

28 fraudulent practice, or sustained any damage. Instead, it is only

necessary to show that members of the public are likely to be deceived." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647-48 (1996) (citing *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983)).

The third cause of action was previously dismissed as against Bank of America on November 29, 2011. (Dckt. 109).

Plaintiffs have not provided evidence that Recontrust engaged in unfair business practices, or that its practices are likely to mislead the public. Plaintiffs communicated with Sovereign, and Recontrust was merely the foreclosure trustee. Plaintiffs further do not oppose the granting of summary judgment on this Third Cause of Action.

There being no disputed factual issue and Plaintiffs being unable to provide evidence of Recontrust's allegedly deceptive practices, the motion is granted as to the third cause of action against Defendant Recontrust.

**Fourth Cause of Action --Intentional Interference with Contractual Relations**

The fourth cause of action is for intentional interference with contractual relations. Plaintiffs do not request relief under the Fourth Cause of Action against BANA, but only Recontrust. A claim for intentional interference with contractual relations requires that Plaintiffs establish the following elements: (i) Plaintiffs had a valid and existing contract; (ii) Defendant had knowledge of the contract and intended to induce its breach; (iii) contract was in fact breached by contracting party; and (iv) Plaintiffs suffered damage. *Savage v. Pacific Gas & Electric Co.*, 21 Cal. App. 4th 434, 448 (Cal. App. 1st Dist. 1993).

1    The BANA Defendants seek an order granting summary judgement
2  as to the fourth cause of action against Recontrust.

3    Here, Plaintiffs fail to provide evidence in support of the
4  second, third, and fourth elements for this cause of action.  There
5  is no evidence that Recontrust was involved in the alleged loan
6  modification requests, the decision-making by BANA as to any
7  requests for loan modifications, or taking any action to induce
8  BANA to have the non-judicial foreclosure sale conducted or not
9  conducted.    There is no evidence presented that a breach of the
10 contract, the note and deed of trust, occurred or was induced to
11 occur by Recontrust.  Rather, the uncontradicted evidence presented
12 is that a non-judicial foreclosure sale was conducted based on the
13 defaults in payments on the note by Plaintiffs and at the direction
14 of BANA.    No evidence was presented that there was any other
15 contract, such as to postpone the December 27, 2010 non-judicial
16 foreclosure sale.  No evidence is presented that Recontrust had any
17 involvement in deciding when to enforce the note and deed of trust
18 other than at BANA's instruction.

19    There being no disputed factual issues and Plaintiffs being
20 unable to provide evidence of the intentional interference with a
21 contract by Recontrust, the motion is granted as to the fourth
22 cause of action against Defendant Recontrust.

23
24 **Fifth, Sixth, and Seventh Causes of Action – Cancellation
   of Trustee's Deed, Quiet Title, and Declaratory Relief**

25    Summary judgment is granted the BANA Defendants on the
26 remaining causes of action for Cancellation of Trustee's Deed
27 (Fifth Cause of Action), Quiet Title (Sixth Cause of Action), and
28 Declaratory Relief (Seventh Cause of Action) because the

1  Plaintiffs' claims are dependent upon prevailing on the First,
2  Second, Third, and Fourth Causes of Action to render the
3  non-judicial foreclosure sale invalid.    Plaintiffs have not
4  provided any evidence to raise any genuine dispute as to material
5  facts concerning BANA and Recontrust having conducted the
6  December 27, 2010 non-judicial foreclosure sale, BANA having
7  acquired title to the Property through the non-judicial foreclosure
8  sale, and BANA having superior title to the property by virtue of
9  the Trustee's Deed issued from the non-judicial foreclosure sale.
10
                   **REQUEST FOR RELIEF BY PACIFIC CREST**
11                 **PARTNERS, INC. and JOHN MUDGETT**
12      Pacific Crest and Mudgett, defendants, filed a response to the
13  BANA Defendants' Motion for Summary Judgment.    These two Defendants
14  provide no evidence with the Response, but argue that the court
15  should grant them summary judgment as well pursuant to Federal Rule
16  of Civil Procedure 56(f) and Federal Rule of Bankruptcy Procedure
17  7056.    This rule allows the court to grant summary judgment to a
18  non-moving party.    If the court does not grant such relief, these
19  two Defendants request that the court make a summary adjudication
20  of issues pursuant to Federal Rule of Civil Procedure 56(g) and
21  Federal Rule of Bankruptcy Procedure 7056.
22      The substance of the Pacific Crest and Mudgett argument is
23  that since Pacific Crest claims title to the Property by the
24  Trustee's Deed received from the foreclosure sale, if BANA prevails
25  on its summary judgment motion, then so should Pacific Crest and
26  Mudgett.    Other than citing to the two paragraphs of Federal Rule
27  of Civil Procedure 56 and making allegations in the two-page
28  motion, these Defendants offer the court little in support of the

relief requested.

The court declines to exercise the power to enter summary judgment for a non-moving party in connection with the present motion for several reasons.  First, Pacific Crest and Mudgett are not parties to the present motion.  The motion was filed against the Plaintiffs by the BANA Defendants.  Through a "Response" Pacific Crest and Mudgett seek to effectively intervene and force their way into the motion.  No provision is made under the Federal Rule of Civil Procedure to force a "joinder" as a party for someone else's motion.[12]

Prior to the 2010 amendment to the Federal Rule of Civil Procedure, the federal trial courts could *sua sponte* grant summary judgment to a non-moving party.  *Cool Fuel, Incorporated, v. Connett*, 685 F.2d 309 (9th Cir. 1982), affirming granting of summary judgment for the party against whom the motion for summary judgment was filed.  More recently, in *Voggenthaler v. Maryland Square Shopping Center, LLC*, 724 F.3d 1050, 1066 (9th Cir. 2013), the Ninth Circuit Court of Appeals stated,

> The district court granted summary judgment against the operator, SBIC, *sua sponte*, followed by a RCRA permanent injunction. This was error, because the homeowner plaintiffs in the RCRA suit never moved for summary judgment against SBIC.

> There are only two general situations where a district court may *sua sponte* enter summary judgment; neither applies to this case. A district court may enter summary judgment against a party that has moved for summary judgment when the court determines the moving party cannot prove its case at trial. *See, Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir.

---

[12]    This is not Pacific Crest's and Mudgett's first improper attempts to ride the coattails of BANA and "join" in a motion.  *See* Memorandum Opinion and Decision for Motion to Dismiss, 2:22-28, Dckt. 109.

2003); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982). Here, SBIC did not ask for summary judgment in the homeowners' RCRA case. The second situation is when a Fed. R. Civ. P. 12(b)(6) motion is converted into a motion for summary judgment under Rule 56 by consideration of materials outside the pleadings. Fed. R. Civ. P. 12(d). That did not occur here either.

As in *Voggenthaler*, neither of the two possible situations exist. This was not a Rule 12(b)(6) motion converted to a summary judgment and Pacific Crest and Mudgett are not parties against whom summary judgment has been sought.

Second, while Pacific Crest and Mudgett try and force their way in and request such relief, the court has not given Plaintiffs notice and an opportunity to respond (Fed. R. Civ. P. 56(f)) to the granting of the motion for these "non-moving" defendants who are not parties to the present motion. While there may remain little at issue with the granting of summary judgment to the BANA Defendants, the Plaintiffs do get their "day in court" on the question if Pacific Crest and Mudgett should be granted summary judgment.

Finally, the court issued a preliminary injunction enjoining Pacific Crest and Mudgett, and each of them, from engaging in certain conduct during this Adversary Proceeding.[13] This order includes the requirement of the Plaintiffs to fund a $2,000.00 a month deposit in lieu of a Federal Rule of Civil Procedure 65(c) bond for costs and damages, if any, to Pacific Crest and Mudgett. The request for injunctive relief and the cash bond must be addressed in connection with any request for judgment by these two Defendants.

---

[13]    Preliminary Injunction, Dckt. 41.

1    The Response of Pacific Crest and Mudgett for a non-moving

2    party grant of summary judgment or summary adjudication is denied

3    without prejudice.

## CONCLUSION

5    BANA is granted summary judgment on the First Cause of Action

6    for Fraud, Second Cause of Action for Negligent Misrepresentation,

7    Fifth Cause of Action for Rescission or Cancellation of Trustee's

8    Deed, and Sixth Cause of Action for Quite Title.  The court having

9    previously dismissed the Third Cause of Action for Unfair Business

10   Practices and Seventh Cause of Action for Declaratory Relief, the

11   granting of the Summary Judgment Motion resolves all claim asserted

12   against BANA.  No claims have been asserted by Plaintiffs against

13   BANA in the Fourth Cause of Action for Intentional Interference

14   with Contractual Relation and Eighth Cause of Action for Injunctive

15   Relief.

16   Recontrust is granted summary judgment on the First Cause of

17   Action  for  Fraud,  Second  Cause  of  Action  for  Negligent

18   Misrepresentation,  Third  Cause  of  Action  for  Unfair  Business

19   Practices, Fourth Cause of Action for Intentional Interference with

20   Contractual  Relations,  Fifth  Cause  of  Action  for  Rescission  or

21   Cancellation of Trustee's Deed, Sixth Cause of Action for Quite

22   Title, and Seventh Cause of Action for Declaratory Relief.  No

23   claims under the Eighth Cause of Action for Injunctive Relief are

24   asserted against Recontrust.  The granting of the Summary Judgment

25   Motion resolves all claim asserted against Recontrust.

26   Pursuant to Federal Rule of Civil Procedure 54(b) and Federal

27   Rule of Bankruptcy Procedure 7054 the court will enter a separate

28   judgment for BANA and Recontrust, and each of them, and against

G. Wendell Ulberg and Kathleen Ulberg, and each of them, this summary judgment motion having resolved all claims as against the BANA Defendants.

This Memorandum Opinion and Decision constitutes the court's proposed findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 and Federal Rule of Bankruptcy Procedure 7052 and 28 U.S.C. § 157(c)(1).

This Memorandum Opinion and Decision is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 157(c)(1) and FRBP 9033. Within 14 days after being served with this Memorandum Opinion and Decision, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Bankruptcy Judge's Memorandum Opinion and Decision."

Dated: October 22, 2013

RONALD H. SARGIS, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

      Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __XX____ Other Persons Specified Below:

Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Scott A. CoBen
1214 F Street
Sacramento, CA 95814

Adam N. Barasch
One Embarcadero Center, Suite 2600
San Francisco, CA 94111